UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON HERNANDEZ,

           Plaintiff,

                              Case No.  2:16-CV-10854

v.                            Judge David Lawson
                              Magistrate Judge Anthony P. Patti

HEIDI WASHINGTON, et al.,

               Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS (DE 18) AND TO DENY AS MOOT PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION (DE 22)**

**I.**    **RECOMMENDATION**:  The Court should grant Defendants' August 29, 2016 motion to dismiss (DE 18) and should deny as moot Plaintiff's October 20, 2016 motion for a preliminary injunction.  (DE 22.)

**II.**    **REPORT:**

    **A.**    **Background**

    Plaintiff Aaron Hernandez is a Michigan state prisoner, currently incarcerated at the Carson City Correctional Facility.  (DE 20.)  In March 2016, while incarcerated at the Central Michigan Correctional Facility ("CMCF"), Plaintiff filed the instant lawsuit *pro se*, naming the following Defendants, in both

their individual and official capacities: Heidi Washington, Director of the

Michigan Department of Corrections; Jerome Warfield, Sr. and Barbara Sampson,

members of the Michigan Parole Board; Lori Gidley, CMCF Warden; Al Sanger,

CMCF Classification Director; and Ivan Scott, CMCF Resident Unit Manager

("RUM").  (DE 1.)   This case has been referred to me for all pretrial matters.  (DE

4.)

In sum, Plaintiff alleges that Defendants violated his right to due process

under the Fourteenth Amendment when they classified him as a sex offender,

without having first afforded him a hearing, despite his not having been convicted

of a sex offense.[1]  According to the Complaint, that classification has negatively

impacted Plaintiff's ability to receive parole, and has made him ineligible to

participate in certain prison programs/activities.  (DE 1 at 5.)  Plaintiff does not

admit that he committed sexual offenses and has declined to participate in a

recommended sex offender treatment program, and the Complaint contends that

---

[1] As per the Complaint, Plaintiff was charged with two sex-based crimes, but those charges were dismissed pursuant to his plea agreement.  (DE 1 at 4.)  However, the presentence investigation report prepared prior to Plaintiff's sentencing "included allegations that Plaintiff had committed sexual misconduct during the course of his crimes . . . ."  (*Id.*).  That presentence report is not in the record before the Court, nor is the plea transcript, though both are referred to in the Complaint.

was listed as "a reason" he was denied parole in October 2014.  (*Id.* at 5-6; see ¶ 29.)[2]

In August 2015, Plaintiff filed a grievance with prison officials regarding his classification as a sex offender without having first had a hearing, but that grievance was denied at Steps I, II and III.  (*Id.* at 7-9.)  Plaintiff seeks a declaratory judgment stating that the classification without a hearing violates the Fourteenth Amendment's Due Process Clause; an injunction directing the removal of the sex offender classification and sex offender treatment until he receives a hearing; a new hearing before the Parole Board; and, $10,000.00 in compensatory and punitive damages.  (*Id.* at 11-12.)

### B.   Instant Motion

In lieu of an answer, on August 29, 2016, Defendants filed the pending joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (DE 18.)  Defendants raise several grounds for dismissal.  First, all Defendants allege Plaintiff has failed to plead a viable Fourteenth Amendment claim because he, like all state prisoners, has no liberty interest regarding parole in Michigan.  (DE 18 at 12-13.)  Second, Defendants Sampson and Warfield contend that they, as members of the Michigan Parole Board, possess immunity for acts taken in their quasi-judicial official functions.  (DE 18 at 13-14.)  Third, Defendant Sanger contends he is entitled to

---

[2] The Parole Board's decision is not in the record before the Court.

3

dismissal because the Complaint does not contain any specific allegations of wrongdoing pertaining to him; relatedly, Defendants Scott, Gidley and Washington contend they are entitled to dismissal because the Complaint only specifically alleges they were involved in denying Plaintiff's prison grievance, which is not actionable under §1983. (DE 18 at 14-18.)  Finally, all Defendants contend they are entitled to both Eleventh Amendment and qualified immunity.  (DE 19-22.)

Plaintiff filed his response in opposition in October 2016 (DE 21),[3] and Defendants filed their reply later that month.  (DE 23.)[4]  The Court will discuss Defendants' arguments separately, though not in the order they were presented.

### C.    Fed. R. Civ. P. 12(b)(6)

The Federal Rules of Civil Procedure require "[a] pleading that states a claim for relief [to] contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The rule governing defenses and objections provides corollary direction, namely that a party may assert the defense of "failure to state a claim upon which relief can be granted" by motion.  Fed. R. Civ. P. 12(b)(6).

_____

[3] Plaintiff also filed a motion for preliminary injunction in October 2016.  (DE 22.) Because the motion to dismiss should be granted, for the reasons which will be discussed *infra*, the Court should **DENY AS MOOT** the motion for preliminary injunction.

[4] Without seeking leave of Court, Plaintiff filed a sur-reply.  (DE 24.)  Because Plaintiff did not receive permission to file it, the Court will not consider the sur-reply, which has been stricken.  (DE 25.)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*,

5

482 Fed. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d

591, 594 (6th Cir. 1989)).  Furthermore, "courts may not rewrite a complaint to

include claims that were never presented . . . nor may courts construct the

Plaintiff's legal arguments for him.  Neither may the Court conjure up unpled

allegations, nor create a claim for Plaintiff . . . ."  *Rogers v. Detroit Police Dept.*,

595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and

recommendation of Binder, M.J.) (quotation marks and citations omitted).[5]

### D.    Discussion

#### 1.  Failure to Allege Personal Involvement

##### a.  Defendant Sanger

The Complaint alleges that Defendant Sanger "is the Classification Director

at CMCF and is responsible for the classification of prisoners at CMCF."  (DE 1,

¶19.)  Beyond alleging his title, the Complaint merely includes Sanger as part of a

list of Defendants "directly and/or indirectly classifying and/or labeling Plaintiff as

a sex offender," who "directly and/or indirectly" failed to provide him with a

hearing, and who (among others) "failed to develop and implement a policy . . . ."

(DE 1, ¶¶ 45-47.)

---

[5] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2
(E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow
Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading
requirements, including Rule 12(b)(6).").

Defendants' motion accurately notes that "Hernandez fails to allege any specific action by Defendant Sanger other than he was the Classification Director at [CMCF]." (DE 18 at 18.) In his response brief, Plaintiff asserts that Sanger "failed to properly classify Plaintiff" and "made such a classification without first providing Plaintiff a fact-finding hearing . . ." (DE 21 at 5-6); however, because he has not specifically pleaded exactly what acts Sanger *personally* took, or failed to take, in reality Plaintiff is arguing that Sanger's job title alone is sufficient to impose liability upon him. Lumping him in with a host of other players, simply because he holds the title of "director" is not enough.

"[A] complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 Fed. App'x 762, 764 (6th Cir. 2002). Indeed, the Sixth Circuit has held that even if a plaintiff is *pro se*, "[m]erely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corrections Corp. of America*, 92 Fed. App'x 188, 190 (6th Cir. 2004). This Court has similarly dismissed claims when the complaint merely listed a particular defendant's job title. *See, e.g., Baker v. Noronha*, 2013 WL 639336, at *3 (E.D. Mich. Jan. 8, 2013) (Michelson, M.J.) ("Plaintiff's Complaint contains a 'List of Defendants' naming 13 individuals and entities. It identifies Adray's title as 'RN,' Bollheimer as 'WPA,' Morris as

7

Physician's Assistant, Kirstensen as RN, and McMahon as RHIT.  Beyond this name-title listing, there are no other references to these five Defendants in the Complaint. There are no substantive allegations from which their specific involvement can even be inferred. Given the absence of any specific factual allegations against these Defendants, Adray, Bollheimer, Morris, Kirstensen, and McMahon contend they should be dismissed.  The Court agrees.") (citations omitted), *report and recommendation adopted at* 2013 WL 639153 (E.D. Mich. Feb. 21, 2013) (Tarnow, J.).

"It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints."  *Frantz v. Michigan Dep't of Corrections*, 2011 WL 3100564, at *4 (W.D. Mich. July 25, 2011) (citation omitted).  Because Plaintiff has only presented an unadorned "name, rank and serial number" type of allegation against Defendant Sanger, he has failed to satisfy a "basic pleading essential" and, consequently, the claims against Sanger should be dismissed.[6]

---

[6] The record, especially the Complaint, does not discuss whether Sanger's position as classification director is supervisory in nature.  However, to the extent that Plaintiff may attempt to argue that Sanger should be liable due to his supervisory capacity, such a claim would be insufficient.  *See, e.g., Grinter v. Knight,* 532 F.3d 567, 575 (6th Cir. 2008) ("In his complaint, Grinter alleges that Warden Haeberlin

### b.  Defendants Scott, Gidley and Washington

According to paragraphs 33-36 of the Complaint, RUM Scott denied Plaintiff's Step I grievance, concluding that decisions of the Michigan Parole Board were not grievable.[7]  (DE 1 at 7-8.)  Warden Gidley, as per paragraphs 36-37 of the Complaint, denied Plaintiff's Step II grievance.  (DE 1 at 8-9.)  Finally, as pointed out in the motion to dismiss, the Complaint's only specific allegation against Director Washington is that she denied Plaintiff's Step III grievance.  (DE 18 at 17.)  Notably, however, the Complaint does not state that Director Washington *personally* denied Plaintiff's Step III grievance.  Instead, paragraphs 38-39 of the Complaint assert that the Step III grievance was received by the "Director's Office" but the actual denial was made by the "Office of Legal Affairs," specifically a non-party named Richard Russell.  (DE 1 at 9.)

Director Washington's role in these events is not specified, other than a listing of her job title and some duties Plaintiff believes she has.  As with Sanger, she is thereafter listed with a host of others as someone who "directly and/or indirectly" was responsible for Plaintiff's misclassification, lack of due process,

---

and Commissioner Rees violated his due process rights by acting in a supervisory capacity and allowing their employees to violate Grinter's rights and for affirming the finding of guilt. Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability.") (quotation marks and citation omitted).

[7] Plaintiff's grievances and the responses thereto are not in the record before the Court.

9

and "failure to develop and implement a policy . . . ."  (DE 1, ¶¶ 45-47.)  These references to Washington, based solely on her job title, are insufficient to state a cognizable claim for relief.

In addition, it is well-settled that the denial of an administrative grievance does not constitute unconstitutional behavior.  *See, e.g., Alder v. Correctional Medical Services*, 73 Fed. App'x 839, 841 (6th Cir. 2003) ("Furthermore, defendants DeBruyn, King, and Naylor were involved solely by virtue of their denial of Alder's grievances. The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Grinter*, 532 F.3d at 576 ("The denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.") (quotation marks and citation omitted). The only claims against Defendants Scott, Gidley and Washington are based on their roles in denying Plaintiff's administrative grievance.  Therefore, the claims against them should be dismissed.

Moreover, any claims Plaintiff may be attempting to raise based upon the supervisory capacities of Scott, and/or Gidley and/or Washington are also fatally flawed because, as previously discussed, *respondeat superior* is not a proper basis for §1983 liability.  To the contrary, "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees. Without more, such a theory would allow liability on a respondeat superior basis--a

10

basis expressly rejected by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 . . . (1978) under [§] 1983, and by [the Sixth Circuit] in *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir. 1978) in a direct constitutional action pursued in accordance with the case of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 . . . (1971)." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). In other words, "the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel . . . unless it is shown that the defendant 'encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Horton v. Martin*, 137 Fed. App'x 773, 775 (6th Cir. 2005) (citing *Monell,* 436 U.S. at 691–95). The only personal, direct involvement Plaintiff alleges is the denial of his grievances. Thus, any *respondeat superior*-based claims against Defendants Scott, Gidley and Washington should also be dismissed.

Even if the Court were to find, under the liberal standards applied to *pro se* pleadings, that Plaintiff has adequately alleged personal involvement against any of the Defendants, his claims would nevertheless fail for the reasons that follow.

### 2. Eleventh Amendment Immunity

Plaintiff has sued all Defendants, each of whom is a state employee, in both their individual and official capacities. (DE 1 at 2.) "A suit against a public official in his official capacity is deemed to be a suit against the governmental

11

entity, not a suit against the official, personally." *U.S. ex rel. Diop v. Wayne County Community College Dist.,* 242 F.Supp.2d 497, 516 (E.D. Mich. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). "In general, [s]tate governments and entities that can be considered arms of the state are immune from suits for money damages under the Eleventh Amendment. Specifically, the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (quotation marks and citations omitted). Therefore, the official capacity claims seeking monetary relief should be dismissed as to all Defendants.

"The Eleventh Amendment, however, does not bar Plaintiffs' claim for declaratory relief against the individual Defendants in their personal capacities." *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d 586, 597 (S.D. Ohio 2016) (citing *Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir.2000)). However, for the plethora of reasons discussed elsewhere in this report and recommendation, all of Plaintiff's claims, monetary and declaratory alike, should be dismissed.

### 3. Immunity from Monetary Damages for Members of the Parole Board (Defendants Sampson and Warfield)

Paragraph 24 of the Complaint alleges that in September 2013, two non-party members of the Parole Board ordered Plaintiff to undergo a psychological assessment to determine his risk of "sexually reoffending." (DE 1 at 5.) The next

12

paragraph of the Complaint states that a report was prepared in October 2013 by a social worker, who is not a party to this case, which found that Plaintiff had a high risk of sexually reoffending and, thus, should receive sexual offender treatment. (*Id.*).  Paragraph 25 goes on to allege that the report was relied upon by two members of the Parole Board (who are not parties to this action), along with Defendants Warfield and Sampson, to deny Plaintiff parole.  (*Id.*)[8]

"State parole board members are absolutely immune from suit for monetary damages for actions taken with respect to their decision to grant or deny parole." *Hawkins v. Morse*, 194 F.3d 1312 (Table), 1999 WL 1023780, at *1 (6th Cir. Nov. 4, 1999).  The actions/inactions of Defendants Warfield and Sampson at issue pertain to the Parole Board's decision to deny parole to Plaintiff.  Thus, both Warfield and Simpson are absolutely immune from Plaintiff's claims for monetary damages.

### 4.  No Liberty Interest in Parole or Prison Programs

#### a.  General Procedural Due Process Principles

---

[8] According to the Parole Board's website, "[m]ost parole decisions are made by three-member panels of the Parole Board.  Decisions for prisoners serving a life sentence are made by majority vote of all ten members of the Parole Board." http://www.michigan.gov/corrections/0,4551,7-119-1435_11601-22909--,00.html (last visited January 4, 2017). The Complaint asserts that Plaintiff is not serving a life sentence (DE 1 at 4), so it is unclear why two additional, non-party Parole Board members would have been involved in a decision to deny parole for Plaintiff.

Plaintiff maintains that classifying him as a sex offender, without first holding a preclassification hearing, denied him the right to (presumably procedural)[9] due process under the Fourteenth Amendment.  (DE 1 at 10-11.) However, for a person to have a constitutional right to procedural due process, he/she must first have either a property or liberty interest.[10]

---

[9] Though the complaint does not specifically state that Plaintiff's claims are based on procedural due process, as opposed to substantive due process, the Court construes the claims as being based on procedural due process because they involve alleged harm stemming from failing to hold a hearing.  *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 125-126 (1990) ("The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.") (citations and footnote omitted).

[10] As a prefatory note, Plaintiff disavows in his response to the motion to dismiss any claims that his due process rights were infringed by the Parole Board having relied upon inaccurate information (i.e., that he actually is a sex offender) as part of its decision to deny him parole.  (*See* DE 21 at 18.)  Regardless, to the extent his Complaint sets forth, or attempts to set forth, such a claim, dismissal is proper. *Caldwell v. McNutt*, 158 Fed. App'x 739, 740-741 (6th Cir. 2006) ("Michigan law, which imbues the Parole Board with broad discretion, does not create a liberty interest in the granting of parole. Therefore, even if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution. The district court properly concluded that Caldwell failed to state a claim on which relief could be granted under § 1983.") (citations omitted).

14

As this Court has previously explained, albeit in a different type of case:

> The Fourteenth Amendment to the United States Constitution, prohibits a state actor from "depriv[ing] any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and a plaintiff may bring a § 1983 suit for violation of procedural due process, *Zinermon . . ., 494 U.S. [at] 125 . . . . "To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999) (citing *Zinermon,* 494 U.S. at 125–26, 110 S.Ct. 975).

*Dubuc v. Green Oak Tp.*, 642 F.Supp.2d 694, 700 (E.D. Mich. 2009).

The Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). Thus, "the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release." *Bd. Of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Instead, a prisoner has a protected liberty interest in parole only if state law creates an entitlement to parole. *Inmates of Orient Correctional Institute v. Ohio State Adult Parole Auth.,* 929 F.2d 233, 235 (6th Cir. 1991) ("If state law entitles an inmate to release on parole, moreover, that entitlement is a liberty interest which is not to be taken away without due process. The Supreme Court has made it clear that a mere unilateral

15

hope or expectation of release on parole is not enough to constitute a protected liberty interest; the prisoner must, instead, have a legitimate claim of *entitlement* to it.") (quotation marks omitted) (quoting *Greenholtz*, 442 U.S. at 7).

### b. Sixth Circuit Precedent

Turning from those general constitutional principles to the Michigan parole system specifically, the Sixth Circuit has clearly held that "the Michigan parole scheme does not create an expectation regarding parole that is sufficient to trigger a constitutionally protected liberty interest." *Ward v. Stegall*, 93 Fed. App'x 805, 806 (6th Cir. 2004).[11]   In fact, the Michigan Supreme Court has similarly

---

[11] That same basic holding regarding Michigan prisoners having no liberty interest regarding parole has been reaffirmed multiple times. *See, e.g., McCarthy v. Rubitschun*, 2006 WL 2331171, at *3 (W.D. Mich. Aug. 10, 2006) ("In *Sweeton v. Brown,* 27 F.3d 1162, 1164-65 (6th Cir.1994) (en banc), the Sixth Circuit, noting 'the broad powers of the Michigan procedural authorities to deny parole,' held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall,* No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.,* No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis,* No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall,* No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys,* No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.,* No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v.. Gach,* No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.,* No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis,* No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach,* No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry,*

recognized that there is no liberty interest in parole for prisoners under the Michigan parole system. *Glover v. Parole Bd.*, 596 N.W.2d 598 (Mich. 1999). Under Sixth Circuit precedent, Plaintiff's parole-based claims thus are insufficient to create a liberty interest, which, in turn, dooms his due process claims.

### c. Cases From Other Circuits

Although Plaintiff's claims are foreclosed by Sixth Circuit precedent holding Michigan prisoners have no liberty interest in parole, there are cases from outside the Sixth Circuit which, to put it broadly, require a hearing before a prisoner who was not convicted of a sex crime may be classified as a sex offender. Even if the Court were to leniently examine those cases, which are assuredly not binding in this District, Plaintiff would not be entitled to relief.

For example, Plaintiff heavily relies upon *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), in which the Ninth Circuit held that a prisoner was entitled to a pre-classification hearing. Though not discussed by the parties, the Court has on its own discovered similar conclusions reached by other circuits. *See, e.g., Kirby v. Siegelman*, 195 F.3d 1285, 1288 (11th Cir. 1999); *Chambers v. Colorado*, 205 F.3d 1237 (10th Cir. 2000); *Renchenski v. Williams*, 622 F.3d 315, 323, 327 (3rd Cir.

---

No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson,* No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.,* No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson,* No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990).").

2010).  Generally, those opinions utilize either the "stigma plus" test or a test in which the focus is on whether prison conditions exceed a sentence or involve atypical and significant hardships.  *See* Lindsey Webb*, The Procedural Due Process Rights of the Stigmatized Prisoner,* 15 U. Pa. J. Const. L. 1055, 1059-1060 (2013) ("In making such determinations, courts rely on either the "stigma plus" test set forth in *Paul v. Davis*, [424 U.S. 693 (1976)] or one of the two liberty interest tests articulated by *Sandin v. Conner* [515 U.S. 472 (1995)]-- the 'atypical and significant' standard or the 'exceeds the sentence' standard.") (footnotes omitted).[12]  In other words, any stigma based upon being classified as a sex offender, *standing alone*, is insufficient to create a liberty interest.  *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999) ("Only where the stigma of damage to a reputation is coupled with another interest, such as employment, is procedural due process protection triggered. . . . The Due Process Clause is implicated only when state conduct alters a right or status previously recognized by state law. This has come to be known as the 'stigma-plus' test."); *Catanzaro v. Henry*, 848 F.Supp.2d 780, 796 (W.D. Mich. 2012) (holding that "even if there is some additional stigma associated with participation in the RSOP [sex offender

---

[12] Specifically, the Supreme Court held in *Sandin* that a liberty interest implicating the Due Process Clause only exists where the prisoner can demonstrate that the state action would "inevitably affect the duration of his sentence" or impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 487.

treatment program], stigma alone is not sufficient to invoke procedural due process protection.").

Regardless of which test is utilized, however, Plaintiff's claims must fail. First, the Hawaii parole system at issue in *Neal* is readily distinguishable from Michigan's system, because in Hawaii "[e]ach inmate who is identified as a sex offender must undergo a twenty-five session psychoeducational treatment program *in order to become eligible for parole*." 131 F.3d at 822 (emphasis added). Similarly, completing treatment was a prerequisite for parole eligibility in *Kirby*. *See* 195 F.3d at 1288 ("As a consequence of being classified as a sex offender, Edmond must participate in group therapy sessions of Sexual Offenders Anonymous as a prerequisite for parole eligibility."). By contrast, Plaintiff has not shown that completing sex offender treatment is a prerequisite for him to receive parole consideration. In fact, paragraph 29 of his Complaint states that his refusal to participate in sex offender treatment was only "a reason" he was denied parole. (DE 1 at 6.) Moreover, though its decision was unfavorable towards him, Plaintiff's Complaint notes that the Michigan Parole Board *did, in fact*, consider whether he should be granted parole. (*Id.*)

Second, other cases from outside this circuit where courts concluded prisoners possessed due process-based rights to a preclassification hearing involve serious, overwhelmingly negative consequences stemming from that classification,

19

such as a loss of already-accrued good time credits or assignment to disciplinary segregation. *See, e.g., Chambers*, 205 F.3d 1237 (removal of accrued good time credits from a prisoner for refusal to participate in offender treatment deemed sufficient to create a liberty interest); *Renchenski*, 622 F.3d at 323, 327 (prisoner serving life sentence without possibility of parole had liberty interest in classification as a sex offender even though that classification did not affect his parole status because refusal to participate in treatment "subject[ed] him to substantial penalties, including the loss of his prison job, assignment to disciplinary custody for ninety days, cell restriction for thirty days, suspension of the right to receive visitors, and loss of privileges such as access to television, radio and the commissary. . . . [M]andating Renchenski's participation in SOTP is not within the sentence imposed since he is incarcerated for committing murder in the first degree and not for committing a sexual offense. . . .  In turn, compelled treatment, i.e., sex offender therapy, changes the conditions of Renchenski's sentence and, accordingly, constitutes a loss of liberty that exceeds his loss of freedom from confinement.").  By contrast, Plaintiff cites much less severe, far more ordinary effects stemming from his classification, such as an inability to participate in prison educational programs.  (*See* DE 1 at 6, ¶ 30.)  However, claims based upon an inability to participate in such routine prison programs are insufficient to give rise to a liberty interest.  *See, e.g., Frantz*, 2011 WL 3100564, at *7 ("Federal

20

courts consistently have found that prisoners have no constitutionally protected liberty interest in prison employment, vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989) (no constitutional right to prison employment); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers 'grievous loss'); *Argue v. Hofmeyer,* 80 F. App'x 427, 429 (6th Cir.2003) (prisoners have no constitutional right to rehabilitation, education or jobs).").

In describing the deference provided to prison officials in the management of their institutions, the Sixth Circuit has stated that:

> because the daily operation of a correctional facility poses difficult and unique management problems, prison official should be accorded substantial deference in the adoption and implementation of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Brown v. Johnson*, 743 F.2d 408, 410 (6th Cir. 1984) (internal quotations omitted). Corrections Officials have broad discretion in the administration of prisons. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Irrespective of whether Plaintiff pleaded guilty to or was convicted of a sex crime, the prison officials who are

21

charged with housing him must necessarily, and may legitimately, take into account his psychological and behavioral tendencies and legitimate risk factors in managing his successful and safe incarceration within the prison population, just as these factors were addressed in his pre-sentence report, apparently without objection or successful challenge. [13]   In short, Plaintiff has not shown that his classification as a sex offender, and the recommended treatment attendant thereto, has either resulted in a "stigma plus" or has caused his sentence to be exceeded

---

[13] It is noted that the Michigan Court Rules entitled Plaintiff to challenge at sentencing any aspects of the presentence investigation report with which he disagreed.  *See* MCR 6.425(E)(1)(b) ("At sentencing, the court must, on the record: . . . give each party an opportunity to explain, or challenge the accuracy or relevancy of, any information in the presentence report, and resolve any challenges in accordance with the procedure set forth in subrule (E)(2) . . . .").  If portions of a presentence report are successfully challenged, the objectionable portions are excised/corrected before the report is sent to the Department of Corrections.   MCR 6.425(E)(2) ("If the court finds merit in the challenge or determines that it will not take the challenged information into account in sentencing, it must direct the probation officer to (a) correct or delete the challenged information in the report, whichever is appropriate, and (b) provide defendant's lawyer with an opportunity to review the corrected report before it is sent to the Department of Corrections.")

The record does not disclose whether Plaintiff challenged the portion of the presentence report detailing the sexual aspects of his offense(s).  Importantly, however, Plaintiff does not argue that he was not afforded the opportunity at sentencing to raise such a challenge.  In other words, in the absence of evidence to the contrary, the Court may presume that MCR 6.425 was followed and, consequently, Plaintiff received the hallmarks of procedural due process--notice and an opportunity to be heard at sentencing regarding the contents of the presentence investigation report.  Plaintiff has not argued, much less shown, that the due process afforded him under Michigan law was insufficient or otherwise constitutionally infirm.

and/or has worked an atypical and significant hardship upon him, compared to the normal incidents of prison life.

Even if the Court leniently applies and examines precedent from outside the Sixth Circuit, Plaintiff has not shown a cognizable liberty interest and his due process claims should be dismissed.

### 5. Qualified Immunity

Finally, Defendants contend they are entitled to qualified immunity. The Sixth Circuit has summarized the contours of qualified immunity at the motion to dismiss stage as follows:

> Qualified immunity shields government officials performing discretionary functions from liability if they have violated an individual's constitutional right, but that right was not "clearly established" when the officials acted. Thus, a two-part test determines whether qualified immunity applies: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. We are free to consider [the two-part test] in whatever order is appropriate in light of the issues before us and may begin with the second step. . . . Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted, . . . so we review an assertion of qualified immunity to determine only whether the complaint adequately alleges the commission of acts that violated clearly established law. We apply the ordinary standard used in reviewing motions to dismiss, accepting well-pled factual allegations as true. The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right.

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 562-563 (6th Cir. 2011) (quotation marks and citations omitted).  "Ultimately, the plaintiff bears the burden of showing that an officer [or other public official] is not entitled to the defense of qualified immunity."  *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  The Supreme Court has cautioned that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law. We do not require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Stanton v. Sims*, ___ U.S. ___, 134 S.Ct. 3, 5 (2013) (quotation marks and citations omitted).

When the facts of this case are considered against that backdrop, particularly Plaintiff's failure to show that he had a cognizable liberty interest, it would appear that Defendants are entitled to qualified immunity since there is neither a clearly established right for  Plaintiff to have received a hearing regarding the prison officials' alleged "classifying and/or labelling" him as a sex offender (other than the aforementioned opportunity to object to the presentence investigation report at sentencing), nor a violation of a constitutional right.  However, the Sixth Circuit recently has cautioned district courts that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.

24

Although an officer's [or other state official's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir. 2015) (quotation marks and citations omitted). *Accord Courtright*, 839 F.3d at 518.  Therefore, since the motion to dismiss should be granted for the reasons previously discussed in this Report and Recommendation, the Court need not address definitively at this stage of the proceedings whether dismissal is also proper on qualified immunity grounds.

### E.  Recommendation

All of Plaintiff's claims against all Defendants should be dismissed because Plaintiff has not shown that he had a cognizable liberty interest in receiving either a preclassification hearing or parole.  In addition, all Defendants are entitled to immunity under the Eleventh Amendment for all claims against them in their official capacities for monetary damages.  Moreover, Plaintiff's claims against Defendants Sanger, Scott, Ridley and Washington should be dismissed because he failed to plead in his Complaint sufficient personal involvement by those four Defendants in the acts/omissions which gave rise to this action.  Finally, Defendants Sampson and Warfield are absolutely immune from Plaintiff's claims for monetary relief, due to their status as members of the Michigan Parole Board.

For all of those separate and combined reasons, the Undersigned

**RECOMMENDS** that the Court **GRANT** Defendants' motion to dismiss (DE 18)

and **DENY AS MOOT** Plaintiff's motion for preliminary injunction. (DE 22.)

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to

file specific objections constitutes a waiver of any further right of appeal. *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 20, 2017                s/ Anthony P. Patti
                                       Anthony P. Patti
                                       UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 20, 2017, electronically and/or by U.S. Mail.

                                       s/Michael Williams
                                       Case Manager for the
                                       Honorable Anthony P. Patti

27